UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT PAULETTA, | |
| Plaintiff, | CIVIL ACTION NO. 1:23-cv-01759 |
| v. | (SAPORITO, C.M.J.) |
| CRAIG DIEHL, et al., | |
| Defendants. | |

## MEMORANDUM

This is a fee-paid *pro se* civil action, brought by the plaintiff, Robert Pauletta, against two federal governmental entities, the Federal Deposit Insurance Corporation ("FDIC") and the Office of the Comptroller of the Currency ("OCC"), and against a private-sector bank, Adams County National Bank ("ACNB"), and two of its executive officers, James Helt and Barry Dillman.[1]

The plaintiff's *pro se* second amended complaint asserts state-law claims of negligent supervision against the FDIC and OCC, brought

---

[1] The plaintiff also previously asserted state-law breach-of-fiduciary-duty claims against a private-practice lawyer, Craig Diehl, and his business, the Law Offices of Craig Diehl, based on Diehl's representation of Pauletta in connection with a bankruptcy case. But all claims against Diehl and his business have been voluntarily dismissed by the plaintiff. *See* "Precept," Doc. 44; Order of Mar. 13, 2024, Doc. 45.

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346,[2] and state-law claims of negligence, fraud, and aiding and abetting breach of fiduciary duty against ACNB, Helt, and Dillman, brought pursuant to 28 U.S.C. § 1367.[3] *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a federal court's obligation to liberally construe the filings of *pro se* litigants). For relief, Pauletta seeks an unspecified amount of compensatory and punitive damages.

---

[2] The *pro se* second amended complaint suggests that, rather than bringing his claims against the FDIC and OCC under the FTCA, he has brought these tort claims under a statutory provision granting the FDIC the power to "sue and be sued," 12 U.S.C. § 1819(a). But, as discussed below, the FTCA provides the *exclusive* remedy for state-law tort claims against federal agencies, such as the FDIC and the OCC. *See* 28 U.S.C. § 2769(a); *see also Kieffer v. Vilk*, 8 F. Supp. 2d 387, 393 (D.N.J. 1998).

[3] The *pro se* second amended complaint suggests that we may exercise original jurisdiction over his claims against the bank and its officers because ACNB is a "federally chartered financial institution." But the bank's mere status as a national bank does not confer federal jurisdiction over claims against it; the proper inquiry is whether plaintiff's claims arise under federal law, which they do not. *See generally* 28 U.S.C. § 1331 (federal question jurisdiction); *Wachovia Bank. v. Schmidt*, 546 U.S. 303, 309–10 (2006) ("When Congress first authorized national banks in 1863, it specified that any suits, actions, and proceedings by and against them could be had in federal court. . . . Congress ended national banks' automatic qualification for federal jurisdiction in 1882."); *Bank of Am., N.A. v. Arsenis*, No. 22-4508, 2023 WL 2572381, at *2 (D.N.J. Mar. 20, 2023). We further note that diversity jurisdiction over these claims under 28 U.S.C. § 1332 does not exist because the plaintiff, the bank, and the bank officers are all citizens of Pennsylvania.

On February 20, 2024, ACNB, Helt, and Dillman filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, together with a brief in support. Doc. 40; Doc. 41.

On February 21, 2024, FDIC and OCC filed their own motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Doc. 42. On March 6, 2024, FDIC and OCC filed a brief in support of their motion. Doc. 43.

The plaintiff had filed no response whatsoever to the defendants' motions to dismiss.

I. BACKGROUND

The *pro se* second amended complaint is fairly unintelligible. But based on publicly available court records,[4] we are able to ascertain the

---

[4] In addition to the vague and confusing allegations of the second amended complaint itself, we have considered the voluminous publicly available docket records of bankruptcy and state court proceedings involving Pauletta and his company, Ream, including: *In re Ream Props., LLC*, No. 15-bk-02980 (Bankr. M.D. Pa. filed July 15, 2015); *Ream Props., LLC v. Hamilton*, No. 323 MDA 2017 (Pa. Super. Ct. filed Feb. 23, 2017); *ACNB Bank v. Ream Props., LLC*, No. 1063 MDA 2017 (Pa. Super. Ct. filed July 3, 2017); *Commonwealth v. Pauletta*, No. CP-22-CR-0007111-
(continued on next page)

following background facts:

---

2015 (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Dec. 18, 2015); *Ream Props. LLC v. Hamilton*, No. 2015-CV-00466-DJ (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Jan. 22, 2015); *Ream Props. v. Hamilton*, No. 2014-CV-03178-CV (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Apr. 8, 2014); *ACNB Bank v. Ream Props., LLC*, No. 2013-CV-10851-NT (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Dec. 13, 2013); *ACNB Bank v. Ream Props., LLC*, No. 2012-07363 (Cumberland Cnty. (Pa.) Ct. Com. Pl. filed Dec. 5, 2012); *Marhevka v. Ream Props., LLC*, No. 2011-CV-05054-CV (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed May 17, 2011); and *Ream Props. LLC v. Hamilton*, No. MJ-12106-CV-0000320-2014 (Dauphin Cnty. (Pa.) Magis. Dist. Ct. filed Dec. 10, 2014). We have also considered publicly available court opinions filed in some of these same cases: *Ream Props., LLC v. Hamilton (In re Ream Props., LLC)*, No. 15-bk-02980, 2017 WL 405613 (Bankr. M.D. Pa. Jan. 30, 2017) (granting summary judgment against Ream in two adversary proceedings seeking to enjoin state court proceedings against Pauletta personally and seeking an award of damages for violations of automatic bankruptcy stay based on the same state court proceedings); *Hamilton v. Ream Props., LLC (In re Ream Props., LLC)*, No. 15-bk-02980, 2017 WL 122985 (Bankr. M.D. Pa. Jan. 9, 2017) (granting motion for relief from automatic stay to permit the Hamiltons to litigate a state court action against Pauletta as co-guarantor of a loan to Ream); *Pauletta v. ACNB Bank*, 299 A.3d 936 (table), 2023 WL 3736813 (Pa. Super. Ct. 2023) (affirming dismissal of Pauletta's claims against ACNB alleging improper assignment of a note to the Hamiltons); *Ream Props., LLC v. Hamilton*, No. 323 MDA 2017, 2018 WL 818624 (Pa. Super. Ct. Feb. 12, 2018) (affirming civil contempt order and sanctions against Pauletta arising from his repeated filing of *pro se* pleadings on behalf of Ream in defiance of multiple trial court orders); *ACNB Bank v. Ream Props., LLC*, No. 1063 MDA 2017, 2017 WL 5499329 (Pa. Super. Ct. Nov. 16, 2017) (dismissing appeal and affirming judgment against Pauletta on a note assigned to the Hamiltons by ACNB). A district court, of course, may properly take judicial notice of state and federal court records. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

- 4 -

Pauletta is or was the sole member of limited liability company Ream Properties, LLC ("Ream"). In April 2008, Ream entered into an agreement with Thomas and Theresa Hamilton to acquire, rehabilitate, and resell real properties. In May 2011, Ream entered into a loan agreement with ACNB, which was guaranteed both by Pauletta and by the Hamiltons, who pledged their personal residence as collateral for the loan. At some point thereafter, the business relationship between Pauletta and the Hamiltons soured.

Ream defaulted on the loan, and ANCB obtained a confessed judgment on the note in November 2012.[5] To satisfy their obligation as guarantors, the Hamiltons took assignment of the ACNB/Ream note in April 2013.

In 2014, seeking to recover his losses from a dispute with a property buyer, Pauletta, proceeding without counsel, brought a state court action

---

[5] *See Pauletta v. ACNB Bank*, 299 A.3d 936 (table), 2023 WL 3736813, at *1 (Pa. Super. Ct. 2023) (noting judgment by confession entered in Adams County in November 2012); *see also Hamilton v. Ream Props., LLC (In re Ream Props., LLC)*, No. 15-bk-02980, 2017 WL 122985 (Bankr. M.D. Pa. Jan. 9, 2017) (noting judgment obtained by ACNB in November 2012).

on behalf of Ream against the Hamiltons (the "Dauphin County" action).[6]
In response, the Hamiltons moved for dismissal, requested sanctions, and asked that Pauletta be held in contempt based on his repeated filing of *pro se* pleadings on behalf of Ream in defiance of court orders in multiple matters.[7]

---

[6] Pauletta originally filed a civil action in common pleas court, appearing *pro se* on behalf of his company, in *Ream Properties v. Hamilton*, No. 2014-CV-03178-CV (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Apr. 8, 2014). In response to the complaint, the Hamiltons filed preliminary objections on the ground that, as a limited liability company, Pauletta could not represent Ream *pro se*. The trial court sustained their preliminary objections. Instead of obtaining legal representation and filing an amended complaint to continue litigating the original April 2014 case, Pauletta filed a new *pro se* complaint on behalf of Ream in a magisterial district court action, *Ream Properties LLC v. Hamilton*, No. MJ-12106-CV-0000320-2014 (Dauphin Cnty. (Pa.) Magis. Dist. Ct. filed Dec. 10, 2014), obtaining default judgment against the Hamiltons in January 2015. The Hamiltons appealed the default judgment to the common pleas court, where the appeal was docketed as *Ream Properties LLC v. Hamilton*, No. 2015-CV-00466-DJ (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Jan. 22, 2015). *See generally Ream Props.*, 2018 WL 818624, at *1 (summarizing procedural history of Dauphin County litigation on appeal from contempt orders in that case).

[7] *See Ream Props.*, 2018 WL 818624, at *1. In support of their contempt motion, the Hamiltons pointed to orders filed in *Marhevka v. Ream Properties, LLC*, No. 2011-CV-05054-CV (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed May 17, 2011) (order of Apr. 5, 2012, admonishing defendants that Ream must be represented by a licensed attorney and referring Pauletta to district attorney for practicing law without a license), and *ACNB Bank v. Ream Properties, LLC*, No. 2013-CV-10851-NT (Dauphin Cnty. (Pa.) Ct. Com. Pl. filed Dec. 13, 2013) (order of Jan.

*(continued on next page)*

Shortly before an August 2015 motions hearing was scheduled to be held in the Dauphin County action, Ream filed a Chapter 11 petition for bankruptcy reorganization on July 15, 2015, and the Dauphin County action was automatically stayed with respect to the debtor, Ream.[8] On August 12, 2015, the trial court in the Dauphin County action entered an order holding Pauletta, personally, in contempt and directing him to pay $3,295.50 in attorney fees to the Hamiltons within ten days.[9]

On August 24, 2015, the Hamiltons filed a second contempt motion based on Pauletta's failure to comply with the earlier contempt order, seeking additional sanctions against Pauletta, and on February 10, 2017, following a hearing, the state court entered a consent order summarizing the parties' resolution of the case, including the motion for contempt.[10]

---

27, 2015, enjoining Pauletta from representing Ream and dismissing all motions and other papers filed by Pauletta on behalf of Ream).

[8] Ultimately, the *Ream* bankruptcy was converted to a Chapter 7 liquidation. Following the ultimate dissolution of the debtor, which included the abandonment of all property subject to secured claims and a distribution of $2,211 to the Hamiltons as unsecured claimants, the bankruptcy case was closed on April 16, 2021.

[9] *See Ream Props.*, 2018 WL 818624, at *2.

[10] The case had been briefly transferred to the *Ream* bankruptcy court by Pauletta, but the bankruptcy court dismissed the dispute in January 2016. Ream also filed two separate adversary actions in bankruptcy court, asserting that the contempt proceedings violated the

*(continued on next page)*

*(continued on next page)*

This order declared that Pauletta had been found in contempt and that, in exchange for his payment of the Hamiltons' attorney fees, the underlying case would be dismissed with prejudice.[11] The order further directed that Pauletta was to serve three 30-day periods of confinement in the county jail, with an option for Pauletta to avoid reporting for prison by paying $1,000 to defense counsel before each of the three reporting dates.[12]

Pauletta took an appeal from both contempt orders to the Superior Court of Pennsylvania. On February 12, 2018, the Superior Court quashed Pauletta's appeal with respect to the August 2015 contempt order on timeliness grounds, and it affirmed the February 2017 contempt order on the merits.[13]

In the meantime, the Hamiltons moved in the *Ream* bankruptcy proceedings for relief from the automatic stay to proceed against Pauletta

---

automatic stay triggered by Ream's bankruptcy filing, but the bankruptcy court granted summary judgment in favor of the Hamiltons in both adversary proceedings on January 30, 2017. *See Ream Props.*, 2018 WL 818624, at *2 (summarizing procedural history in appeal from contempt orders); *see also Ream Props.*, 2017 WL 405613 (granting summary judgment in both adversary actions).

[11] *See Ream Props.*, 2018 WL 818624, at *2.
[12] *See supra* note 11.
[13] *Ream Props.*, 2018 WL 818624, at *3, *4.

as guarantor of the ACNB/Ream note in a case pending before the Cumberland County court of common pleas (the "Cumberland County" action).[14] In January 2017, the bankruptcy court found that Pauletta was not protected by the automatic stay, and thus the Hamiltons could proceed against him in state court.[15] On June 23, 2017, following a nonjury trial, the trial court in the Cumberland County action entered a $120,000 judgment on the guarantee against Pauletta and in favor of the Hamiltons, as assignees of the ACNB/Ream note.[16] Pauletta appealed to the Superior Court, but his appeal was dismissed on procedural grounds on November 16, 2017.[17]

In January 2022, Pauletta filed a new state-court action against

---

[14] The Cumberland County action was originally commenced by ACNB with a transfer of the Adams County judgment in December 2012, where it was docketed in Cumberland County as *ACNB Bank v. Ream Properties, LLC*, No. 2012-07363 (Cumberland Cnty. (Pa.) Ct. Com. Pl. filed Dec. 5, 2012). After assignment of the ACNB/Ream note, the Hamiltons were substituted as plaintiffs in place of ACNB.

[15] *Hamilton*, 2017 WL 122985, at *2.

[16] *ACNB Bank ex rel. Hamilton v. Ream Props., LLC*, No. 2012-07363 (Cumberland Cnty. (Pa.) Ct. Com. Pl. filed Dec. 5, 2012) (judgment entered June 23, 2017), *appeal dismissed*, No. 1063 MDA 2017, 2017 WL 5499329 (Pa. Super. Ct. Nov. 16, 2017).

[17] *ACNB Bank v. Ream Props., LLC*, No. 1063 MDA 2017, 2017 WL 5499329 (Pa. Super. Ct. Nov. 16, 2017) (dismissing appeal and affirming judgment against Pauletta on a note assigned to the Hamiltons by ACNB).

ACNB asserting various tort claims, all based on the allegedly improper assignment of the ACNB/Ream note to the Hamiltons in April 2013. ACNB moved to dismiss the complaint as frivolous because the underlying issues had previously been litigated. On June 15, 2022, the trial court granted the motion to dismiss, dismissed the complaint with prejudice, and barred Pauletta from filing any further *pro se* litigation against ACNB, its employees, or its agents, related in any way to the matters addressed in the complaint. Pauletta appealed to the Superior Court, which affirmed the trial court's order.[18]

## II.  DISCUSSION

Having been enjoined from any further re-litigation of his claims against ACNB in state court, Pauletta now seeks a new avenue for relief by bringing these same claims in federal court. In addition to his claims against ACNB and its executives, he asserts negligent supervision claims against two federal financial regulatory agencies, based on the very same assignment of the ACNB/Ream note to the Hamiltons in April 2013.

### A. Claims Against the FDIC and OCC

In this federal civil action, Pauletta asserts a state-law claim of

---

[18] *Pauletta*, 2023 WL 3736813 at *2–4.

negligent supervision against the FDIC and OCC. He alleges that, as a federally chartered financial institution, ACNB was under regular supervision of these two federal regulatory agencies, and thus, the two agencies, and federal bank examiners whom they employed, were negligent in allowing ACNB to improperly assign the ACNB/Ream note to the Hamiltons in April 2013. The FDIC and OCC, however, have moved to dismiss the plaintiff's claims against them for lack of subject matter jurisdiction, on the ground that they are entitled to sovereign immunity from suit.

Generally, the United States is entitled to sovereign immunity from suit. As the Third Circuit has summarized:

> Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied."

*Cooper v. Comm'r*, 718 F.3d 216, 220 (3d Cir. 2013) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976), and *Lane v. Pena*, 518 U.S. 187, 192 (1996)) (citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government *and its agencies* from suit." *Fed. Deposit Ins.*

*Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (emphasis added) (addressing claims against the FDIC); *see also Clark v. Wells Fargo Bank*, 585 Fed. App'x 817, 819–20 (3d Cir. 2014) (per curiam) (addressing claims against the OCC).

It is the plaintiff's burden to establish the existence of subject matter jurisdiction. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Thus, it has been stated that a "party suing the United States must point to an unequivocal waiver of sovereign immunity." *McMillan v. Dep't of the Interior*, 907 F. Supp. 322, 325 (D. Nev. 1995); *see also Malone v. Bowdoin*, 369 U.S. 643, 645 (1962) (claimant must plead source of waiver of sovereign immunity); *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) ("Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity."); *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981) ("A party who sues the United States has the burden of pointing to a congressional act that gives consent."); *Hatten v. Bledsoe*, No. 13-CV-00209, 2014 WL 5473571, at *6 (M.D. Pa. Aug. 4, 2014) (citing *Malone*), *R. & R. adopted*, 2014 WL 5474071 (M.D. Pa. Oct. 28, 2014).

As noted above in the margin, the *pro se* second amended complaint asserts that the plaintiff's tort claims against the FDIC and OCC are brought under a statutory provision granting the FDIC the power to "sue and be sued," 12 U.S.C. § 1819(a).[19] But Congress has expressly provided that, notwithstanding any such "sue and be sued" statutes, the FTCA provides the *exclusive* remedy for state-law tort claims against federal agencies, such as the FDIC and the OCC. *See* 28 U.S.C. § 2769(a); *see also Kieffer v. Vilk*, 8 F. Supp. 2d 387, 393 (D.N.J. 1998). Thus, based on the facts alleged by the *pro se* plaintiff, we will liberally construe these claims against the FDIC and OCC as having been asserted under the FTCA. *See generally Mala*, 704 F.3d at 244–46.

Under the FTCA, the United States has waived its sovereign immunity with respect to tortious conduct by employees of the federal government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(a)(2); *see also id.* § 2674; *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008).

---

[19] The plaintiff does not cite any corresponding statute with respect to the OCC.

"[S]trict adherence to the terms and requirements of the FTCA is jurisdictional and cannot be waived." *Dilg v. U.S. Postal Serv.*, 635 F. Supp. 406, 407 (D.N.J. 1986).

As a threshold matter, the FDIC and OCC note, correctly, that an FTCA claim may only be brought against the United States itself. *See Boyd v. United States*, 482 F. Supp. 1126, 1128 (W.D. Pa. 1980) ("Only the United States Government itself is amenable to suit under [the FTCA]. Employees and *specific government agencies* are not proper defendants.") (emphasis added). But substitution of the United States as defendant in place of the agency is the appropriate remedy for that defect, rather than dismissal. *See Fields v. Blake*, 349 F. Supp. 2d 910, 913 (E.D. Pa. 2004); *see also Garcia v. United States*, No. 12-1978, 2013 WL 433538, at *1 (M.D. Pa. Feb. 5, 2013). Thus, we will liberally construe these claims against the FDIC and OCC as having been asserted against the United States itself instead. *See generally Mala*, 704 F.3d at 244–46.

Regardless, however, we lack subject matter jurisdiction over the plaintiff's FTCA claims for three other reasons articulated by the FDIC and OCC in their supporting brief.

First, the plaintiff has failed to properly exhaust administrative

remedies. As a prerequisite to suit under the FTCA, a claim must first be presented to, and denied by, the federal agency. In relevant part, the FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). "Fulfillment of the administrative exhaustion requirement is essential to a court's subject matter jurisdiction over a claim under the FTCA. A complaint's failure to allege exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction." *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994) (citations omitted); *see also Gomez v. United States*, No. 14-CV-01176, 2016 WL 826899, at *3 (M.D. Pa. Mar. 3, 2016) ("Although the exhaustion requirement under the Prison Litigation Reform Act of 1995 is an affirmative defense and can be waived, the exhaustion of administrative remedies under the FTCA is jurisdictional and cannot be waived.").

With respect to Pauletta's negligent supervision claims against the United States, arising out of the conduct of unidentified bank examiners employed by the FDIC and OCC, he has failed to allege the exhaustion of administrative remedies, and thus these state-law tort claims against the United States are barred by federal sovereign immunity, and we lack subject matter jurisdiction to grant any relief. Moreover, we note that the federal agency defendants have filed declarations by FDIC and OCC officials confirming that their records reveal that each declarant's respective agency has not received an administrative tort claim from Pauletta relating to the claims alleged in this action. Pauletta has adduced no evidence to the contrary.

Second, even if his claims were not barred for failure to exhaust administrative remedies, the plaintiff's FTCA claims against the FDIC and OCC would be barred by the applicable statute of limitations. The FTCA is a limited waiver of the United States' sovereign immunity. *CNA v. United States*, 535 F.3d 132, 139–42 (3d Cir. 2008). In relevant part, the FTCA provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six

>months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). It is well settled that failure to comply with the FTCA's two-year presentment requirement is jurisdictional. *See Medina v. City of Phila.*, 219 Fed. App'x 169, 171 (3d Cir. 2007); *see also id.* at 172 ("The filing of an administrative claim with the appropriate agency is referred to as 'presentment.'"). The plaintiff bears the burden of proving that he timely filed an administrative claim with the agency. *Id.*

The allegedly negligent conduct by FDIC and OCC bank examiners occurred on or before April 1, 2013, the date of the allegedly improper assignment of the ACNB/Ream note to the Hamiltons. Pauletta has failed to allege that he filed an administrative claim with either the FDIC or OCC at any time, much less within two years after the assignment. Moreover, as noted above, the FDIC and OCC have proffered declarations to establish that their agency records do not reflect the receipt of any such administrative claim from Pauletta at any time. Pauletta has adduced no evidence to the contrary.

Third, the plaintiff's negligent supervision claims against the FDIC and OCC fall within the discretionary function exception to the FTCA.

The FTCA's waiver of sovereign immunity expressly excludes claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The purpose of the discretionary function exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Bistrian v. Levi*, 299 F. Supp. 3d 686, 712 (E.D. Pa.) (internal quotation marks omitted), *aff'd in part, vacated in part on other grounds*, 912 F.3d 79 (3d Cir. 2018). It is well established that investigatory and supervisory activities of banking regulators, such as those alleged by the plaintiff in this case, are protected by this exception. *See ALX El Dorado, Inc. v. Sw. Sav. & Loan Ass'n/FSLIC*, 36 F.3d 409, 411 n.15 (5th Cir. 1994) ("[T]he claimed *failure* of a banking agency to supervise is protected by the 'discretionary function' exception.") (emphasis in original); *see also United States v. Gaubert*, 499 U.S. 315, 328–34 (1991); *Clark*, 585 Fed. App'x at 820; *Emch v. United States*, 630 F.2d 523, 528–29 (7th Cir. 1980); *Fed. Deposit Ins. Corp. v. Mahajan*, 923 F. Supp. 2d 1133, 1136–37 (N.D. Ill. 2013); *Ard v. Fed. Deposit Ins. Corp.*, 770 F. Supp. 2d 1029, 1038–39 (C.D. Cal. 2011).

Accordingly, the FDIC and OCC motion will be granted, and the plaintiff's FTCA negligent supervision claims against these federal agency defendants will be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. Claims Against ACNB, Helt, and Dillman

The plaintiff has also asserted a variety of state-law tort claims against ACNB, Helt, and Dillman arising out of the April 2013 assignment of the ACNB/Ream note to the Hamiltons. Where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this from the usual case. Therefore, the remaining state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

For the foregoing reasons, the FDIC and OCC motion to dismiss will be granted and the plaintiff's negligent supervision claims against them will be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff's remaining claims against ACNB, Helt, and Dillman will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3), and the motion to dismiss filed by ACNB, Helt, and Dillman will be denied as moot.

An appropriate order follows.

Dated: July 17, 2024         *s/Joseph F. Saporito, Jr.*
                             JOSEPH F. SAPORITO, JR.
                             Chief United States Magistrate Judge